## Case No. 6,962.
### HUTTON v. SCHELL.
[25 Int. Rev. Rec. 168.]

Circuit Court, S. D. New York. May 21, 1879.

CUSTOMS DUTIES—"DELAINES"—ACT OF 1857—ACTION AGAINST COLLECTOR—BURDEN OF PROOF.

[1. Where congress has designated an article by a specific name, and by such name has imposed a duty upon it, general terms in a succeeding part of the same act, although sufficiently broad to comprehend such article, are not applicable to it.]

[2. What goods are included in the term "delaines," in the second section of the act of 1857 (11 Stat. 192), is a question which the jury must determine, upon evidence showing how that term was used, at the date of the passage of the act, by importers and dealers in that class of goods.]

[3. The presumption is that the decisions of the collector and secretary of the treasury are correct, and plaintiff must overcome that presumption by a fair preponderance of proof as to the commercial use of the term at the date of the act.]

[This was an action by Benjamin N. Hutton, surviving partner, against Augustus Schell, to recover an excess of duties exacted by defendant as collector of the port of New York. A similar action for duties assessed upon the cost of inland freight and commissions was tried in Case No. 6,961.]

SHIPMAN, District Judge (charging jury). The plaintiffs imported into this port in the year 1857, and subsequently to March 3d of that year, sundry invoices of ladies' dress goods, made wholly of worsted, and styled by the plaintiffs "mousseline delaines," upon which defendant, as collector, exacted a duty of 24 per cent. ad valorem, which was paid under protest. The action is brought by the plaintiffs to recover an alleged excess of duty, the plaintiffs claiming that the legal rate was 19 per cent. only.

By the tariff act of 1846 [9 Stat. 42], these goods fell under the designation of "manufactures of worsted not otherwise provided for," and were included in Schedule D of that act, and were dutiable at 25 per cent. By the act of 1857 [11 Stat. 192], the duty upon manufactures of worsted or manufactures in which worsted was a component material, and which were not otherwise provided for, was reduced to 19 per cent. When congress has designated an article by a specific name, and by such name has

imposed a duty upon it, general terms in a later part of the same act, although sufficiently broad to comprehend such article, are not applicable to it. In the second section of the act of 1857, manufactures composed wholly of cotton, which are bleached, printed, pointed, or dyed, and delaines, were transferred to Schedule C. Goods in Schedule C were chargeable with a duty of 24 per cent. "Delaines" were chargeable there with a duty of 24 per cent., but the question is whether these goods were or were not, under the principle of law which I shall give you, delaines, and whether the commercial term "delaines" at the time of the passage of the act meant a different article from that imported by the plaintiffs. The collector was of the opinion that these goods, although exclusively of worsted, were delaines, and assessed them at 24 per cent. The plaintiffs were of opinion that the goods were not and never had been generally commercially styled "delaines," but that "delaines," in the commercial signification of that word, were a different article, composed of cotton and worsted. It is a well settled principle that terms of specific description are used in the tariff acts in their general commercial signification; that is, that inasmuch as the tariff laws relate to matters of trade and commerce, and particularly concern business men, the terms are employed in the sense in which at and before the time of the passage of the act they are used by the commercial men in this country who import and largely deal in the articles to which such terms relate, and that the commercial designation of an article among importers of and wholesale dealers in the article in this country at the time of the passage of a tariff act, when such designation is clearly established, fixes its character for the purposes of the tariff laws, and that such terms were not used in their scientific or dictionary sense, if such signification is at the date of the act different from the commercial sense.

The question of fact, then, is, were the imported goods, samples of which have been shown you, known generally among importers and large dealers in such goods in this country at and prior to March 3d, 1857 (the date of the act under which they were dutiable as delaines), under the denomination of "delaines," or did the term "delaines," in commercial signification generally among importers and large dealers, mean a different article? If the term "delaines," as generally understood by the class of men to which I have referred, is established to your satisfaction to have meant a different article from that of the plaintiffs' importation, or, in other words, if the article which was imported by the plaintiffs was not included in the term "delaines," as that word was generally understood among importers and large dealers in such goods in this country at and prior to March 3d, 1857, then your verdict is for the plaintiff; otherwise it will be for the defendant. You are to ascertain what was the distinctive trade meaning of the word "delaines" among the importers and wholesale dealers of the class of goods which is in controversy; not what persons who were exclusively importers of French goods and nothing else called "delaines;" not what dealers in domestic manufactures and nothing else called "delaines;" but what both importers and wholesale dealers in this class of fabrics, who were generally acquainted with the subject, and not speaking vaguely or loosely, generally understood to be the commercial meaning of the word.

The theory of the plaintiffs is that for many years prior to 1857 the article composed wholly of worsted had been imported from France, the country of its manufacture, and had been exclusively known as "mousseline de laine,"—that is, a thin fabric of worsted,—and that it always continued to have this name among wholesale merchants who dealt in it in this country. That subsequently English manufacturers commenced to make a cheaper article of cotton and worsted, which was extensively introduced into this country,—an imitation of the worsted fabric; and that still later American manufacturers competed with the English, and made and sold the same cotton and worsted fabric, which bore generally the name "delaine," and was so bought and sold generally among wholesale merchants; while the superior worsted goods continued to be known as "mousseline de laine," and that the term "delaine" was not applied to them.

The theory of the defendant is that, admitting the general statement of the history of the act which I have given to be correct, after the commencement of the English manufacture both classes of goods were called indiscriminately mousseline delaines, and after awhile and prior to the date of the act of 1857, were also called generally "delaines," and thus "delaines" became a general term which included both classes of fabrics. Before examining more particularly the testimony which has been given in support of these separate theories, I have to say that the plaintiffs take the burden of proof; that is to say, the presumption is that the decisions of the collector and the secretary of the treasury were correct, and that the plaintiffs must overcome that presumption by a fair preponderance of proof which satisfies you that the plaintiffs' importations at the date which I have mentioned, were not generally known among importers and wholesale dealers under the denomination of "delaines." If they do not thus satisfy you, the defendant is entitled to a verdict.

The plaintiffs say that they have fully maintained the correctness of their definition of "delaines" by the following considerations: First. It is admitted that the original name of the fabric was "mousseline delaine," and that this was its only name for

a series of years, and that the name "delaine" was never used in this country prior to the introduction of the English article. Second. They say that the testimony of the men who principally dealt in New York, Boston, and other cities in this article is very uniform. I mean the testimony of Mr. Roumage, Mr. Bliss, Mr. Cheeks, Mr. Bates, and the other large dealers who have testified that the worsted article was called "mousseline delaine," and nothing else, and that there was no change in terms. The foundation of the plaintiffs' case is the established fact that the original name was "mousseline delaine," and that the term "delaines" was not known so long as the French article was the only article in the market; and then they insist that the men who knew most about the subject, and who sold most largely the French and the English article, never heard of a change in the name of the French fabric, but did know when the English article was introduced as an imitation of the worsted goods it was called the "delaine;" and testify that "delaines" never came to be the name of a family, or a general term descriptive of a class. Third. They insist that the history of the art in this country indicates that their commercial definition is correct, for they say that the term "delaines" did not come into use until after the introduction of the English article of cotton and worsted, and was applied first by the dealers in that article, and hence the plaintiffs argue that the term was confined to that article by the persons who dealt in it.

The theory of the defendant is supported by the following considerations: First: That the term "delaines" at and prior to March, 1857, and after the English and American manufactures of cotton and worsted dress fabrics had been introduced to the public, was a general term which was used by importers and wholesale dealers in this country, and meant as well all worsted goods as the imitation which was made of cotton and worsted. The defendant claims that while he admits that the French goods were specifically styled "mousseline delaine," yet that this term had become in the process of time, and in the progress of trade, a subordinate term, and that both classes of dress goods, whether made exclusively of worsted, or of worsted and cotton, were generally known and called "delaines," and the different classes bore specific and subordinate names. Their point is that gradually and progressively after the English goods were introduced, all the goods of this class were called "delaines," and that the term "delaines" became, prior to 1857, the term which was commercially used to designate the two classes of goods indiscriminately. Second. The defendant's witnesses also insist that while the French goods were always called "mousseline delaine," the English and American cotton and worsted imitations were also alike and generally called "mousseline de laines,"

and so there was no distinction between the trade names of the two classes of goods, and thus "mousseline delaine" was indiscriminately applied to each class, and that, dropping the word "mousseline," "delaines" came to mean either class. Third. The defendant criticizes the testimony of the plaintiffs, and seeks to show that it is self contradictory.

I have thus placed before you the question of fact which is to be passed upon by you, and briefly given the opposing theories and summarized the testimony which has been presented in behalf of each theory. If you find this question of fact in favor of the plaintiffs it is agreed that your verdict shall be in their favor in the sum of $14,902 91. If you do not find this question of fact for the plaintiffs your verdict will be for the defendant.

After the judge had finished his charge to the jury, the counsel for the plaintiffs excepted to the refusal of the court to instruct the jury, either in form or substance, as the plaintiffs had prayed. The counsel for the defendant declared that he had no exceptions to take. The jury rendered a verdict for the plaintiffs.